FILED

2004 AUG -6 A II: 02

U.S. DISTRICT COURT
 HD. CT.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KEITH WORTZ                               :
                                          :
            Plaintiff                     :
                                          :        Civil No. 3:01CV01632 (RNC)
V.                                        :
                                          :
MELVIN WEARING                            :
                                          :        August 4, 2004
            Defendant                     :

## PLAINTIFF'S TRIAL MEMORANDUM

**(1)    TRIAL COUNSEL**

     Plaintiff:    Karen Lee Torre
                   Law Offices of Karen Lee Torre
                   51 Elm Street, Suite 307
                   New Haven, CT 06510
                   Tel.: (203) 865-5541
                   Fax: (203) 865-4844
                   E-Mail: ktorre@choiceonemail.com

     Defendant:   Martin S. Echter
                   Fed. Bar No. 07596
                   Office of the Corporation Counsel
                   City of New Haven
                   165 Church Street
                   New Haven, CT 06510
                   (203) 946-7964

**(2)    JURISDICTION**

Jurisdiction is based upon Sections 1331 and 1343(3) of Title 28 of the United States

Code. The plaintiff also invoked the supplemental jurisdiction of the Court in asserting cause

of action which arises under the laws of the State of Connecticut.

**(3)    JURY-NONJURY**

This is a jury case.

**(4)    NATURE OF CASE**

This is an action brought pursuant to 42 U.S.C. §1983 by a New Haven Police Officer and alleges numerous adverse employment actions in retaliation for expressive activity protected by the First Amendment.

**(5)    STIPULATIONS OF FACT AND LAW**

None can be submitted as defendant's counsel has not participated in the preparation of this memorandum.

**PLAINTIFF'S CONTENTIONS**

The plaintiff is a New Haven Police Officer whose employment with the police department dates back to January 6, 1986. He has had varied experience and an excellent work history. Plaintiff was involved in the investigation into the murder of one Philip Cusick which occurred in late 1996. Cusick's remains were found on a road in the town of North Haven. During the course of his investigation, the plaintiff received information which established that Cusick was murdered in the city of New Haven and the killer(s) simply dumped the body in the town of North Haven. In spring of 1997, the plaintiff became concerned over instructions by his superiors to the effect that plaintiff should cease any and all assistance to officers of the North Haven Police

2

Department in connection with its investigation into the Cusick homicide.  He was also ordered to refrain from additional investigation or inquires into the matter.  He was led to believe that New Haven's then police chief Nicholas Pastore was responsible for these orders because Pastore did not "want this homicide coming back to New Haven" according to one of plaintiff's superiors.  When the plaintiff expressed some opposition to these orders, his immediate superiors threatened him with possible loss of his employment.

Since the plaintiff, as a sworn police officer, had an affirmative duty not only to enforce the law but to report a suspicious failure to enforce the law, he disclosed his concerns to prosecuting officials in the New Haven Superior Court.  In response to plaintiff's disclosures, State's Attorney Michael Dearington sought and accomplished the initiation of a Grand Jury inquiry into the matter. Grand Jury proceedings commenced on the matter and focused on the conduct of New Haven police officials in connection with the Cusick homicide, proceedings which were conducted by a judge of the superior court.  Plaintiff alleges that the defendant, New Haven Police Chief Melvin Wearing, angered at the plaintiff's expression of opinion and conferences with prosecutors in the office of State's Attorney Michael Dearington, embarked on a course of retaliatory adverse employment actions against the plaintiff.  The following adverse actions are alleged:

1.      Wearing denied the plaintiff requested security protection at his home for himself and his family in wake of a documented death threat from a member  of a major criminal gang in New Haven.

3

2.      Defendant repeatedly passed over plaintiff for promotion to the rank of Detective although plaintiff was well qualified for promotion and had achieved a high score and rank as a result of a competitive civil service examination mandated by the Charter of the City of New Haven. In accordance with the Charter, promotional eligibility lists are established by New Haven's Civil Service Board on which candidates who achieved a minimum passing score are ranked in accordance with the scores achieved. For each promotional vacancy in the ranks of the department, the appointing authority must select from among the three individuals with the highest numerical scores as recommended by the chief of police.

3.      The City of New Haven, acting through the Board, routinely promotes the individuals chosen by the Chief of Police.

4.      The defendant repeatedly denied the plaintiff a promotion in favor of lower-ranking, less qualified candidates, most with less seniority than the plaintiff and some with far inferior work records including a  history of disciplinary problems.

5.      Defendant refused to allow the plaintiff overtime compensation to which he was entitled in connection with his service on a state police gang task force.

6.      The defendant later removed the plaintiff from his desired position in the statewide task force and returned him to patrol duty in an undesirable neighborhood in New Haven.

7.      Defendant tacitly encouraged other officers, in particular those who were adversely affected or at risk due to plaintiff's disclosures and expression regarding the Cusick's investigation,

4

to intimidate and harass the plaintiff. The defendant tacitly encouraged such officers to threaten and/or assault the plaintiff without fear of arrest or departmental discipline. Accordingly, when the plaintiff was threatened and assaulted by officers who became targets of the Grand Jury investigation, the defendant, although advised of the incidents, refused to take appropriate disciplinary or corrective action against the officers involved.

8.      The defendant forced the plaintiff to take a leave of absence during which he could not actively work or act as a police officer. In connection with the involuntary leave, defendant further issued a written statement, which implied that the plaintiff was placed on leave because he was mentally unfit for duty.

9.      Defendant suspended the plaintiff from employment for one day allegedly for wearing casual clothes while in attendance at a firearm re-certification session while refusing to discipline and take action against officers who committed real and more serious offences.

10.     Defendant later refused to discipline an officer who threatened the plaintiff; defendant also took steps to manipulate the Internal Affairs ("IA")investigation into the matter so as to ensure inaction by the department.

11.     On defendant's orders, the plaintiff suffered reassignment to patrol duty in the most undesirable section of New Haven. Defendant also effected a change in plaintiff's work schedule with the foreknowledge that the change would cause disruption to plaintiff and his family.

12.     The plaintiff further alleges that the defendant intensified his campaign of retaliation

5

against the plaintiff after plaintiff, pursuant to a subpoena, appeared before the aforesaid Grand Jury and provided extensive testimony before the presiding judge. The plaintiff was duty-bound to obey the subpoena and give truthful testimony and answer all questions posed to him by prosecutors. The plaintiff thus testified extensively about facts and information known to him relating to his superiors' conduct during a suspected cover-up of improprieties and misconduct during the Cusick investigation. The defendant was angry and bitter toward the plaintiff for having broken the blue code of silence.

13.     In the wake of plaintiff's Grand Jury testimony, he was physically assaulted by another detective whose conduct was the subject of the Grand Jury proceedings. Defendant took no disciplinary or other action against the offending officer. Defendant also impeded plaintiff's efforts to determine the status of an internal affairs investigation into the assault.

14.     Defendant thereafter summoned the plaintiff to his office at which time he ordered the plaintiff to cease working in any capacity as a police officer.

15.     The defendant thereafter denied the plaintiff a desirable position on the department's SWAT Team although the plaintiff was well qualified for the assignment, having scored highest (#1) on the examination which tests officers' qualification for assignment as a SWAT officer. The defendant ordered the plaintiff reassigned to duty in the department's Family Violence Unit with the foreknowledge that it was the only unit which did not allow for flexibility in shift assignments. The defendant was further aware that the plaintiff was a father with child care responsibilities and imposed the assignment for the purpose of disrupting the plaintiff's family life. Defendant thereafter ignored

6

the plaintiff's complaints regarding the disruption the reassignment caused to him and his family.

16.    The defendant later denied the plaintiff's request for reassignment to work on an evening shift in the Sexual Assault/Bias Unit which would allow plaintiff to resume his usual work hours and thus maintain his normal life style and family life.

17.    The defendant instigated an IA investigation the aim of which was to justify an accusation that the plaintiff violated the department's media policy by speaking out on the topic of misconduct in the Department's handling of the Cusick homicide investigation. Defendant went so far as to order two of his subordinates to contact reporters employed by two newspapers which circulate in New Haven county in an effort to gain statements from the reporters implicating the plaintiff in the violation of a media policy. The defendant's efforts in this regard became the subject of published press articles to the humiliation and embarrassment of the plaintiff.

18.    When the plaintiff returned from his involuntary leave of absence in mid-December of 2000, he was assigned to performed undesirable job tasks while junior, less qualified officers were assigned to the department's narcotics unit where, unlike the plaintiff, the enjoyed flexibility in their schedules. The defendant did this despite the fact that plaintiff is known as a top narcotics officer who had over time established a network of reliable informants.

(6)    **LEGAL ISSUES**

**PLAINTIFF'S ISSUES:**

Depending on when, or if, defendant complies with his pre-trial obligations to the Court and

7

the plaintiff, plaintiff's counsel will raise the issue of an appropriate remedy for defendant's failure to fulfill these obligations which may delay the trial and/or prejudice the plaintiff by delaying his knowledge of defendant's trial evidence and witnesses and thus impede the development of plaintiff's trial strategy.

(7)    **LIST OF WITNESSES**

**For the Plaintiff**

a.    **Keith Wortz**, One Union Avenue, New Haven, CT will testify as to all of the foregoing facts set forth in the complaint, and in Section (6 ) herein.

b.    The defendant, **Melvin Wearing**, will be called to testify regarding his involvement in the adverse actions complained of.

c.    **Lieutenant John Minardi**, One Union Avenue, New Haven, CT. Lieutenant Minardi is expected to testify regarding his role as a Sergeant assigned to the IA unit, his receipt of complaints from the plaintiff regarding threats, intimidation and assaults by fellow officers and the defendant Wearing's hostility to a thorough and appropriate investigation into the incidents.

d.    **Captain Brian Kearney**, 1 Union Ave., New Haven, CT. Captain Kearney is expected to testify regarding his handling of an investigation into alleged threats against the plaintiff and defendant's role in orchestrating an IA investigation into client's contacts with the media regarding the Cusick homicide investigation.

e.    **Lieutenant Joanne Peterson**, 1 Union Avenue, New Haven, CT. Lieutenant Peterson is expected to testify on the same subjects as Captain Kearney.

f.    **Sergeant Louis Cavaliere**, 1 Union Ave., New Haven, CT. Sergeant Cavaliere is president of the New Haven Police Union, Local 530. He will be called to testify about his meetings with the plaintiff and the defendant wherein the plaintiff reported threats to his safety and requested security and

8

was denied same by defendant. He will also testify about the New Haven Charter's provisions as they relate to Civil Service promotional examinations and promotions from established eligibility lists. He will also testify about the seniority, records and disciplinary history of officers promoted to Detective by Melvin Wearing and the increased compensation and benefit accruals attendant to promotion to the rank of Detective.

g.  **Tina Burgett,** 165 Church St., New Haven, CT. Ms. Burgett is Director of Personnel for the City of New Haven. She will be called to testify regarding the promotional process in the city's classified in the civil service, to authenticate the personnel records of those promoted to the rank of Detective, answer questions regarding the integrity and reliability of the information contained in those records, the defendant's established violations of the Charter provisions regarding the "Rule of Three" selection requirement and the issue of compensation and benefits attendant to the job and rank of Detective.

h.  **Cecilia Weiderhold,** New Haven Superior Court, 235 Church St., New Haven, CT. May be called to testify regarding her conferences and meetings with the plaintiff during the time she served as supervisory assistant states attorney and the actions that her office took in response to plaintiff's disclosures.

i.  **Michael Dearington,** New Haven Superior Court, 235 Church St., New Haven, CT. May be called to testified regarding actions that he took as States Attorney in the wake of plaintiffs disclosures including the investigatory inquiries by his office and the initiation of Grand Jury proceedings.

**(8)    PROPOSED VOIR DIRE QUESTIONS**

Attached hereto.

9

**(9)    EXHIBITS**

**Plaintiff's Exhibits**

1.    Plaintiff's personnel file;

2.    The Charter of the City of New Haven;

3.    The Rules of the Civil Service Board of the City of New Haven;

4.    The Eligible List Roster for promotion to the rank of Detective dated November 5, 1998.

5.    List of promotees to the rank of Detective with effective dates of promotions;

6.    Agenda and Minutes of the January 12, 1999 meeting of the New Haven Board of Police Commissioners with attached list of recommended promotions;

7.    Agenda and Minutes of the May 11, 1999 meeting of the City of New Haven Board of Police Commissioners;

8.    Agenda and Minutes of the September 21, 1999 meeting of the New Haven Board of Police Commissioners;

9.    Agenda and Minutes of the November 9, 1999 meeting of the New Haven Board of Police Commissioners;

10.    Agenda and Minutes of the December 14, 1999 meeting of the New Haven Board of Police Commissioners;

LAW OFFICES OF KAREN LEE TORRE • 51 ELM STREET, SUITE 307, NEW HAVEN, CONNECTICUT 06510 • TEL: (203) 865-5541

11.    Agenda and Minutes of the January 11, 2000 meeting of the New Haven Board of Police Commissioners;

12.    Agenda and Minutes of the September 20, 2000 meeting of the New Haven Board of Police Commissioners;

13.    April 13, 2000 memorandum from Sgt. D. E. Langston to Capt. Dean Runlett;

14.    April 20, 2000 letter to defendant from plaintiff's counsel;

15.    April 26, 2000 memorandum from Sgt. C.R. Kelly to Capt. F. Ortiz;

16.    April 26, 2000 memorandum from plaintiff to Sgt. C.R. Kelly;

17.    April 28, 2000 memorandum from plaintiff to Sgt. Jay Rodican;

18.    April 28, 2000 memorandum regarding the plaintiff authored by Sgt. John W. Rodiccu directed to several superiors;

19.    May 2, 2000 memorandum to plaintiff from Sgt. D. Burgh;

20.    May 19, 2000 memorandum to plaintiff to defendant;

21.    May 19, 2000 memorandum to defendant from Sgt. John R. Minardi;

22.    May 19, 2000 memorandum from plaintiff to Sgt. John R. Minardi;

23.    With respect to each of these (including Internal Affairs records for each officer) Personnel file of Michael Hunter;

24.    Personnel file of Brian Mauro;

25.    Personnel file of Karen Gass;

11

26.    Personnel file of Kenny Howell;

27.    Personnel file of Susie Simmons;

28.    Personnel file of Angela Augustine-Day;

29.    Disciplinary records forwarded to and created by Louis Caveliere and/or his designee in Local 530 respecting disciplinary actions taken against Michael Hunter, Brian Mauro, Kenny Howell and Angela Augustine-Day;

30.    Chart depicting time-line of events;

31.    Chart setting forth analysis of damages.


**(10)    DEPOSITION TRANSCRIPT(S)**

None.

**(11)    REQUEST FOR JURY INSTRUCTIONS**

Plaintiff's Proposed Jury Charge is attached hereto.

**(12)    ANTICIPATED EVIDENTIARY PROBLEMS/MOTION IN LIMINE**

**For the plaintiff**

The undersigned counsel anticipates at least two potential evidentiary issues which are the subjects of and set forth in detail in Plaintiff's Motions in Limine which are submitted herewith.

12

**(13)   PROPOSED FINDINGS AND CONCLUSIONS**

N/A.

**(14)   TRIAL TIME**

Plaintiff's counsel estimates a minimum of 1 week, exclusive of jury selection.

**(15)   FURTHER PROCEEDINGS.**

The Court needs to address defendant's failure to participate in the preparation of a

joint trial memorandum and the prejudice that the plaintiff and his counsel have

suffered and will suffer as a result of any late disclosure by defendant of his witnesses

and evidence.

**(16)   ELECTION FOR TRIAL BY MAGISTRATE**

Plaintiff's counsel is unable to state the parties' election as defendant's counsel is

unavailable.

13

RESPECTFULLY SUBMITTED
THE PLAINTIFF


BY _____
KAREN LEE TORRE
Federal Bar No. ct01707
Law Offices of Karen Lee Torre
51 Elm Street
Suite 307
New Haven, CT 06510
(203) 865-5541

His Attorney

CERTIFICATION

    I hereby certify that a copy of the foregoing was mailed this 4th day of August, 2004, to Martin S. Echter, Esq., Office of the Corporation Counsel, City of New Haven, 165 Church Street, New Haven, Connecticut 06510.


_____
Karen Lee Torre

14



FILED

2004 AUG -6  A 11: 02

UNITED STATES DISTRICT COURT COURT
DISTRICT OF CONNECTICUT

KEITH WORTZ          :
                     :
         Plaintiff   :
                     :          Civil No. 3:01CV01632 (RNC)
V.                   :
                     :
MELVIN WEARING       :
                     :          August 3, 2004
         Defendant   :
                     :

## PLAINTIFF'S PROPOSED VOIR DIRE

1.    Is anyone here have any employment or business relationship with the City of New

      Haven or any of its officials?  Does anyone here have a close friend or family

      members who has such a relationship?

2.    Has anyone here ever applied for a job or expect to apply for a job with the City of

      New Haven or have a relative who has a pending or anticipated application for

      employment withe the City of New Haven?

3.    Is anyone here employed in a law enforcement capacity or related to a law

      enforcement officer including anyone who serves as a chief of police or police

      commissioner?

4.    Is anyone here employed by or have any relationship to the Office of the State's

      Attorney in Connecticut or any of its constituent State's Attorney's offices?

5.    Is anyone here related to a State's Attorney or prosecutor in the State of Connecticut or to any officer or employee of the New Haven Police Department?

6.    Is anyone active in political party activities or involved in any way on behalf of a candidate or expected candidate for election to a public office?

7.    Is anyone here related to any elected or appointed official of any political party or the Connecticut State government, including any Board, Commission or the State legislature?

8.    Does anyone here have a relative or friend who is employed by or associated in any way with the Connecticut State Police or the State of Connecticut's Division of Criminal Justice, including the offices of the State's Attorneys in Connecticut?

9.    Is anyone here employed by an insurance agency or company or other organization which engages in the investigation and defense of lawsuits and other claims?

10.    Does anyone here have a child or other relative who may be seeking employment with the Connecticut State Police or any municipal police department?

11.    Does anyone here belong to any group or organization whose aims to lobby public officials or otherwise seek the enactment of any legislation or change in existing laws?

12.    Is there anyone here employed in any Human Resources or personnel management capacity where employee discipline or defense of claims involving  employee discipline is handled directly or indirectly?

2

RESPECTFULLY SUBMITTED
THE PLAINTIFF


BY: _____
KAREN LEE TORRE
Federal Bar No. ct01707
Law Offices of Karen Lee Torre
51 Elm Street
Suite 307
New Haven, CT 06510
(203) 865-5541

His Attorney


<u>CERTIFICATION</u>

I hereby certify that a copy of the foregoing was mailed this _____ day of August, 2004, to Martin S. Echter, Esq., Office of the Corporation Counsel, City of New Haven, 165 Church Street, New Haven, Connecticut 06510.


_____
Karen Lee Torre


3

FILED

2004 AUG -6  A 11: 02

U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KEITH WORTZ                                :

            Plaintiff                    :

                               :          Civil No. 3:01CV01632 (RNC)

V.                                         :

                               :

MELVIN WEARING                             :

                               :          August 4, 2004

            Defendant                   :

## PLAINTIFF'S PROPOSED JURY CHARGE

      The plaintiff respectfully requests the Court to charge the jury as follows.

## I.      INTRODUCTION

      1.      The plaintiff brought this action to obtain redress for what he contends were violations of his rights under the United States Constitution, specifically the first amendment to the Constitution which guarantees freedom of speech. One's rights under the first amendment will be explained to you in more detail later on in this charge. I will first explain to you the federal statute under which this lawsuit has been brought. This civil rights action is authorized pursuant to 42 United States Code § 1983, commonly referred to simply as "Section 1983". This federal civil rights statute provides that any individual may seek relief in a court of law against any person who, acting under color of state law, deprives a person of any rights protected by the Constitution or laws of the United States.

## II.    **THE ELEMENTS**

2.    I have already explained to you the plaintiff's burden of proof which is by a preponderance of the evidence.  There are three essential elements to a § 1983 claim.  First, it must be shown that a defendant engaged in conduct which had the result of depriving the plaintiff of a constitutional right.  Second, it must be shown that the defendant was acting under color of law when he/she engaged in the conduct complained of.  Third, and last, it must be shown that the defendant's acts or conduct were the proximate cause of damages suffered by the plaintiff.  Monroe v. Pape, 365 U.S. 167 (1961).


## COLOR OF LAW

3.    The second requirement that I mentioned, the requirement that a defendant act under color of law, is an element of the plaintiff's proof that you need not concern yourselves with.  Acting under color of law means "under pretense of law," and simply means acting in one's capacity as a public officer at the time of the acts complained of.  In this case, there is no question that the defendant, Melvin Wearing, was acting in his capacity as Chief of Police of the City of New Haven at the time of the incidents which gave rise to this lawsuit.  Thus, there is no question that he was acting under color of law and I therefore instruct you that the plaintiff has met his burden of proof on that one element, so you need not concern yourselves with that issue.

2

**INTENT**

    4.    As for the issue of intent - or the defendant's state of mind - I instruct you that it is not necessary to find that the defendant had any specific intent to deprive the plaintiff of certain constitutional rights. The plaintiff need only show that the defendant intended to commit the acts which <u>resulted</u> in a violation of the plaintiff's rights. Thus, in order to render a verdict in favor of the plaintiff, you need only find that the defendant intended his acts, not that he intended to violate constitutional rights, and further, that those acts had the result of violating the plaintiff's civil rights. <u>Stengel v. Belcher</u>, 522 F.2d 438 (6th Cir. 1975).

**DEPRIVATION OF A CONSTITUTIONAL RIGHT — FIRST AMENDMENT**

    5.    The plaintiff must prove that the acts or omissions of the defendant operated to deprive him of his rights under either the Constitution or laws of the United States. In this case, the plaintiff alleges that the defendant Melvin Wearing violated his right to freedom of speech and expression, a right guaranteed by the first amendment to the United States Constitution.

    More particularly, the plaintiff claims that the defendant imposed a series of adverse employment actions on the plaintiff related to plaintiff's assignments and hours of work. Plaintiff also alleges that defendant placed him on an involuntary leave of absence and under circumstances which suggested to plaintiff's fellow officers, the law enforcement community and the public at large that plaintiff was mentally unfit to continue as a police officer. Plaintiff also alleges that defendant

3

repeatedly deprived him of a promotion to the rank of detective and passed over the plaintiff in favor

of lower-scoring, lower-ranked candidates on the City's promotion eligibility list for the purpose of

punishing plaintiff for his disclosures and cooperation with prosecutors in a grand jury proceeding.

Finally, plaintiff alleges that defendant suspended him from employment under the pretext of a dress

code violation when in reality the real purpose was to retaliate against the plaintiff consistent with

the pattern of other adverse actions complained of.

   6.  The constitutional right to freedom of speech is a right that all citizens enjoy and that

right is not lost when one accepts a job with the government in this case, the municipal government

of the City of New Haven.  Within the context of government employment, employee expression is

generally protected by the first amendment if it touches upon a matter of public concern.  That is, the

general subject matter must not be on a purely private matter but on a matter that is or should be of

public concern.  The words speech and expression are used here interchangeably.  Expression can

take the form of oral or written comments.  Individuals who work for the government retain their first

amendment rights in the context of work-related speech although the law does allow some limitations

on them.  The limitations which the law allows are not pertinent to your decision in this case.  There

are certain issues that the law requires a judge and only a judge to decide.  It is my role in this case

to determine whether Keith Wortz's expressive activity was of the sort protected by the first

amendment to the United States Constitution.

4

You are instructed that I have decided as a matter of law that Keith Wortz's internal expressions of concern regarding his department's handling of the Cusick murder investigation with Internal Affairs and other department personnel, his communications on the same subject with prosecutors and investigators with the Office of the State's Attorney and his communications with and appearance before the Superior Court in connection with the Grand Jury investigation into the handling of the Cusick matter were all protected by the first amendment to the United States as all such speech and activity related to a matter of public concern. United States v. National Treasury Employees Union, 513 U.S. 454 (1995) ("NTEU"); Harman v. City of New York, 140 F.3d 111 (1998); Rankin v. McPherson, 483 U.S. 378 (1987); Pickering v. Bd. of Educ., 391 U.S. 563 (1968); Connick v. Myers, 461 U.S. 138 (1983); Sanjour v. EPA, 56 F.3d 85 (D.C. Cir. 1995); O'Brien v. Town of Caledonia, 748 F.2d 403 (7th Cir. 1984); Solomon v. Royal Oak Township, 842 F.2d 862 (6th Cir. 1988); Flynn v. Giarusso, 321 F.Supp. 1295 (E.D. La 1971); Latino Officers Ass'n v. Safir, 1997 U.S. Dist. Lexis 10983 (S.D.N.Y. 1997); Wolf v. City of Aberdeen, 758 F.Supp. 551 (N.D.S.K. 1991).

Since the Court has decided that legal issue, what remains for you as jurors to decide is the purely factual and disputed issue of whether the plaintiff's protected speech was a motivating factor in each of the adverse actions complained of. The defendant denies that the plaintiff's speech was a factor in one or more of the adverse actions and it is your role to decide this issue of defendant's intent and motivation.

5

What the defendant Wearing's true motivation was in respect to each of the challenged actions is for you and you alone to determine using the criteria for evaluating the credibility of witnesses and other evidence that I have already described to you earlier in these instructions.

If you find that the plaintiff's speech was a motivating factor in one or more of the challenged actions, such would in fact constitute a violation of the plaintiff's constitutional rights. It is unlawful for a public official to retaliate against an employee by adverse employment actions either for the purpose, in whole or substantial part, of punishing the employee for engaging in protected speech or for the equally unlawful purpose of intimidating the employee and/or chilling the employee is future exercise of his right to free speech.

7.     Thus, whether you find that the various decisions to remove the plaintiff from his duties, transfer him to undesirable assignments, change his working shift, deny him assignments and positions (such as a place on the SWAT team)was retaliatory or punitive and/or whether you find that one or more of the actions were taken for the purpose of deterring the plaintiff from engaging in further speech, that is, for the purpose of chilling his exercise of his first amendment rights, then such behavior by the defendant would in fact be violative of the first amendment. Dillon v. Bailey, 45 F. Supp. 2d 167 (D. Conn. 1999)

You are advised that, as a matter of law, the denial to plaintiff of a promotion, his placement on an involuntary leave of absence, and his disciplinary suspension are unquestionably adverse actions. With respect to the other claimed adverse actions, you must decide whether the facts and

6

unique circumstances render them adverse. In this case, plaintiff must show that a transfer to another assignment or shift was something more than a transfer to similar duties under similar working conditions. In order for even an improper transfer to be unlawful, a plaintiff must show that the transfer resulted in undesirable assignments, less responsibility, fewer duties or assignment to perform work which is less prestigious or which is considered generally in his work environment to be undesirable for reasons unique to that occupation. A transfer may also be unlawful, despite no change in technical title or salary, if the transfer is to an undesirable geographic location.

Schutts v. Feldman (as before); Bieluch v. Sullivan, 999 F.2d 666 (2d Cir. 1993); Bernheim v. Litt, 79 F.3d 318 (2d Cir. 1996; Dillon v. Bailey, 45 F. Supp. 2d 167 (D.Conn. 1999).


**MIXED MOTIVES**

Any act committed in retaliation against another for the exercise of a constitutionally protected right is unlawful even if that act, when taken for a different reason, would have been proper and legitimate. The plaintiff must nevertheless prove that his protected speech was a substantial or motivating factor in the defendant's decisionmaking. Chief Wearing may have taken each action for one reason alone. If that sole reason was that the plaintiff engaged in protected speech, you must find that the plaintiff's protected speech was a substantial or motivating factor in the defendant's decision.

8.      The defendant may have taken an action for more than one reason. If so, then you must determine whether one of those reasons was the plaintiff's protected speech. If a desire to

7