**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

**KEITH WORTZ**                    :    **Docket No. 3:01CV01632 (RNC)**


**VS.**                                   :

**MELVIN WEARING**          :    **SEPTEMBER 13, 2004**

**DEFENDANT'S PORTION OF PRETRIAL MEMORANDUM**

**1. Trial Counsel:**

>  Karen Lee Torre
>  The Law Office of Karen Lee Torre
>  51 Elm Street, 3rd Floor
>  New Haven, CT 06510
>  Phone: (203) 865-5541
>  Fax: (203) 865-4844
>  > Attorney for Plaintiff
>
>  Martin S. Echter
>  Deputy Corporation Counsel
>  165 Church Street, 4th Floor
>  New Haven, CT 06510
>  Phone: (203) 946-7958
>  Fax: (203) 946-7942
>  Pager: 1-860-590-4432
>  Fed. Bar No. ct 07596
>  > Attorneys for Defendants

**2. Jurisdiction:**

Plaintiff claims jurisdiction under Title 28, United States Code, Sections

1331 and 1343 and 1367(a), and Title 42, United States Code, Section 1983.

**3. Jury/Nonjury:**

This is a jury case.

**4. Nature of the Case:**

Plaintiff is a New Haven Police Officer who claims the then Chief of Police retaliated against him, in violation of the First Amendment and Fourteenth Amendments to the United States Constitution and the Connecticut Constitution because the plaintiff allegedly reported to prosecutors his suspicions that some senior investigators in the New Haven Department of Police Services <u>other than the plaintiff</u> were interfering in the investigation of a murder in which the body of the victim, one Philip Cusick, was found in North Haven although there was the belief the murder had occurred in New Haven.

The Complaint also refers to the Court's supplemental jurisdiction.

**5. Stipulation of Uncontroverted Facts and Law.**

At all times the defendant was a New Haven Police Officer acting under "color of law" as that term has been interpreted by the federal courts.

**6. Plaintiff's contentions:**

Plaintiff is a police officer in the New Haven Department of Police Services.

Plaintiff claims that the defendants has retaliated against him for his exercise of First Amendment rights to freedom of speech, freedom of association, freedom to petition for redress of grievances.

Plaintiff claims his was subjected to the alleged violations because he allegedly reported to prosecutors his suspicions that some senior investigators in the New Haven Department of Police Services <u>other than the plaintiff</u> were

-2-

interfering in the investigation of a murder in which the body of the victim, one Philip Cusick, was found in North Haven although there was the belief the murder had occurred in New Haven.

Plaintiff claims that the adverse employment actions included, allegedly:

(1)  denial of the plaintiff's request for security protection at his home for himself and his family in response to certain alleged threats;

(2)  the passing over of plaintiff for promotion to the rank of Detective;

(3)  refusal to allow the plaintiff overtime compensation for his participation in a State gang task force;

(4)  reassignment from the gang task force to patrol duty;

(5)  the failure to take disciplinary action against other New Haven Police Officers who allegedly threatened and/or assaulted the plaintiff;

(6)  a one-day suspension for wearing casual clothes at a recertification session while allegedly failing to take disciplinary action against other officers who allegedly committed real and more serious offenses;

(7)  changing the plaintiff's work schedule;

(8)  assigning the plaintiff to the Family Violence Unit;

(9)  denying plaintiff assignment to the Sexual Assault/as Unit;

(10)    impeded plaintiff's efforts to determine the status of an internal affairs investigation of an alleged assault against the plaintiff by another New Haven Police Officer;

(11)    requiring the plaintiff to take a leave of absence and, in connection

-3-

therewith, allegedly implying in writing that the plaintiff was mentally unfit for duty;

(12)    denying plaintiff assignment to the department SWAT Team; and

(13)    initiating an Internal Affairs Investigation in which officers were

directed to question newspaper reporters about statements allegedly made to

them.

## 7. Defendants' contentions:

Defendants deny any actions involving the plaintiff were initiated by the

defendant in retaliation for any of the plaintiff's alleged activities.  In fact, plaintiff

was promoted to Detective, just not as early as he wanted.

Defendant Wearing recalls first reading in the newspaper about a body found on

a lawn in North Haven and believes he saw the name of the victim, Philip Cusick at

that time.   Sometime in 1996, when he was Assistant Chief of Police, defendant

Wearing became aware that North Haven Police were coming to New Haven and

working with New Haven Officers regarding that death.  At that time defendant

Wearing had no involvement in the investigation.

Defendant Wearing became Chief of Police in February 1997 and, sometime

later, perhaps in 1998, then Captain Brian Sullivan advised the Chief that there had

been some movement in the investigation of the Cusick death and the Chief inquired

whether Captain Sullivan was working with North Haven and was advised in the

affirmative.

The Chief believes that in early 2000 he heard one or more rumors in the New

Haven Police Department about a Grand Jury investigation involving the Cusick death

-4-

and shortly thereafter was called to the office of the New Haven States Attorney Michael Dearington.  Mr. Dearington informed the Chief that there was to be a State Grand Jury investigation into the investigation of the Cusick death and I was asked if he (the Chief) had ordered a stop to the investigation of the Cusick murder.  The Chief denied having done so and asked if there was anything I could do and was told no, and was further told to just wait until the Grand Jury investigation is completed.

Subsequently the Chief initiated an investigation by the Internal Values & Ethics Unit (IV&E), formerly known as Internal Affairs, of the New Haven Police Department, to parallel the Grand Jury inquiry and determine if there had been any violations of Departmental Rules or guidelines.

The Chief later met with Mayor John DeStefano and then with Corporation Counsel Thayer Baldwin, Jr., to bring them up-to-date on the IV&E investigation.  It was decided that the internal investigation should be turned over to the Corporation Counsel and the City Chief Administrative Officer James Horan due to apparent accusations that the Chief had ordered a stop of the investigation into the Cusick murder.

Eventually the Chief reprimanded several detectives in connection with their derelictions in the Cusick investigation, but plaintiff Wortz was not disciplined for any of his actions with respect to the Cusick murder investigation by the New Haven Police Department, the State of Connecticut or the State Grand Jury.

The Chief  also volunteered to testify before the State Grand Jury and I did so without being subpoenaed.

-5-

The Chief believes that he first learned that the plaintiff had spoken with someone at the States Attorneys Office sometime after the initiation of the Department's Internal Values & Ethics investigation, probably from one or more of the assigned investigators, Captain Bryan Kearney or Lt. John Minardi, as part of their routinely updating the Chief on the course of that internal investigation.

The Chief had no first hand knowledge that the plaintiff did in fact cooperate with the Grand Jury, that being a secret proceeding, but may have read about it or heard rumors to that effect or may have just assumed it.

Eventually, Captain Sullivan was charged by the State Grand Jury with improprieties in the investigation of the Cusick murder and he resigned from the Police Department.   Retired Captain Sullivan  was eventually acquitted of those criminal charges.   It was also reported in the media that Detectives Coppola and Rodriguez admitted during the trial of Captain Sullivan that they had given false statements during the above-referenced Internal Values & Ethics Investigation into the department's investigation of the Cusick murder.   Those two detectives have pending lawsuits accusing the Chief of violating their rights by having previously reprimanded them in connection with derelictions in the investigation of the Cusick murder.

Regarding the plaintiff's reassignment from the Statewide Task Force and assignment to a patrol position on September 3, 1999, it is the Chief's recollection that he was advised that the plaintiff had expressed concern about financial problems and the need for more overtime and/or extra duty work.   The opportunities for the additional work are greater in the Patrol Division since the work on the Statewide Task

-6-

Force often involves unpredictable hours.  The Chief had no problem with the plaintiff being transferred to the Patrol Division and approved the transfer.

The plaintiff was placed on a paid administrative leave of absence on May 19, 2000 for the officer's personal safety and related reasons spelled out in the personnel memorandum concerning that matter. The Chief also believes the plaintiff had at one time requested to go on leave, and he believes others had also expressed concern that he appeared stressed out.

Regarding the plaintiff's assertion that had been threatened by a fellow officer, the Chief initiated a complete investigation was undertaken by the Internal Values & Ethics Unit.   Sworn statements were taken from a number of individuals and the investigative file was also given to Michael Dearington, States Attorney for New Haven County, for his determination whether or not criminal charges were warranted.

The Chief personally admonished Detective Coppola, the accused Officer, and made sure he received further training in violence in the workplace. Regarding an accusation about an alleged assault by Detective Edwin Rodriguez

the Chief does not recall that an actual assault was involved but that there was hostility displayed and that the Chief orally admonished Rodriguez.

The plaintiff had been placed on paid leave of absence.  It was reported to the Chief that the plaintiff continued to approach persons in the  New Haven

neighborhood where some believed Mr. Cusick had been killed and inquiring about the Cusick matter and various police officers.

-7-

Being on leave he was not authorized to conduct such inquiries nor to leave the impression that he was so authorized. Furthermore, New Haven States Attorney Michael Dearington had advised the Chief to just wait until the investigation was over.

The persons assigned to the SWAT team were assigned based on the recommendation of Lt. Gerald Antunes who was the Officer in Charge of all special tactical units. The plaintiff was assigned to the SCUBA team instead.

The dispute regarding overtime pay for work performed with the Statewide Task Force was made by a number of officers, most of whom had no connection with the Cusick murder investigation, and was resolved in the collective bargaining grievance process.

**8. Legal issues:**

    1. Was the plaintiff retaliated against by the defendant?

    2. Is the defendant entitled to qualified immunity?

    3. Did the plaintiff suffer proximate injury?

    4. To what damages, if any, is the plaintiff entitled entitled?

**9. Voir Dire Questions:**

Filed in separate document.

**10. Defendant's Proposed Jury Charges.**

Filed in separate document.

-8-

**10. Defendants' List of Witnesses:**

1.  Defendant Chief Melvin Wearing will be called to testify in response to all

the allegations of this lawsuit and his knowledge of the investigation of the Cusick

murder and the Internal Values & Ethics Investigation into that investigation.

2.  Hon. Ted Baldwin, Superior Court of Connecticut, City Corporation

Counsel at the time of most of the incidents alleged, may be called to testify

regarding his knowledge of the investigation of the Cusick murder and the

Internal Values & Ethics Investigation into that investigation.

3.  James Horan, retired New Haven Chief Administrative Officer, will testify

about his knowledge of the investigation of the murder of Philip Cusick and the

investigation into the Police Department investigation of that matter and Melvin

Wearing's involvement.

4.  Lt. Joanne Peterson, New Haven Department of Police Services, may be

called to testify about her knowledge of any investigation into complaints by or

about plaintiff Keith Wortz.

5.  Captain Bryan Kearney, New Haven Department of Police Services, may

be called to testify about his knowledge of the investigation of the Cusick murder

and the Internal Values & Ethics Investigation into that investigation.

6.  Lt. John Minardi, New Haven Department of Police Services, may be called to testify about his knowledge of the investigation of the Cusick murder and the Internal Values & Ethics Investigation into that investigation.

7.  Lt. Denise Blanchard, New Haven Department of Police Services, may be

-9-

called to testify about her knowledge of the investigation of the Cusick murder and the Internal Values & Ethics Investigation into that investigation, as well as any investigation initiated by complaints by or about plaintiff Keith Wortz.

8.  States Attorney for New Haven Michael Dearington may be called to testify about his knowledge of the investigation into the Cusick murder and the New Haven Police Department investigation into that murder, and his communications with Keith Wortz and/or Melvin Wearing, and the prosecution of now Retired New Haven Captain Brian Sullivan and statements made at that trial by Detectives Coppola and Rodriguez.

9.  Senior Assistant States Attorney Cecilia Weiderhold, may be called to testify about her knowledge of the investigation into the Cusick murder and the New Haven Police Department investigation into that murder and hers communications with Keith Wortz.

10.  Jerry Sagnella, Director of Payroll, City of New Haven, may be called to testify about the payroll and pension consequences of personnel actions involving the plaintiff.

11.   Will Clark, retired Director of Personnel, City of New Haven, may be called to testify about the collective bargaining agreement provisions involving the plaintiff (grievance, pay, etc.), and his involvement in any of the disputes alleged in the complaint.

-10-

## 11. List of Exhibits:

The defense may offer one or more of the following documents.

- 501.   October 1, 1999 Complaint of New Haven Police Local No. 530 regarding payment of overtime for persons assigned to State R.O.C.C.Y. Task Force

- 502.   January 7, 2002 Letter to Will Clark, then City of New Haven Director of Personnel, from Louis Cavalier, Union President, re MPP 99-17

- 503.   January 18, 2002 Memo to Chief Wearing from Will Clark, then City of New Haven Director of Personnel, re overtime pay issue and settlement

- 504.   Settlement Agreement of Case Nos. MPP-2135 and MPP-21185 re overtime pay during work for State Task Force

- 505.   Report of the Internal Values & Ethics Report into allegations of improprieties into the investigation of the murder of Philip Cusick.

- 506.   Question and Answer Statements taken during the Internal Values & Ethics Report into allegations of improprieties into the investigation of the murder of Philip Cusick.

- 507.   Discipline issued as a result of the Internal Values & Ethics Report into allegations of improprieties into the investigation of the murder of Philip Cusick.

- 508.   Trial testimony in the case of <u>State</u> v. <u>Brian Sullivan</u> (regarding allegations of misconduct by Brian Sullivan during the investigation of the murder of Philip Cusick).

-11-

- 509.   Internal affairs investigation file into complaints made by Keith Wortz.

- 510.   April 13, 2000 Memo from Sgt. D. E. Langston to Capt. Dean Runlett

- 511.   April 20, 2000 letter to Chief Melvin Wearing from Attorney Karen Lee Torre.

- 512.   April 26, 2000 Memo from Officer Keith E. Wortz to Sgt. C. Kelly

- 513.   April 26, 2000 Memo from Sergeant C. R. Kelly to Captain F. Ortiz

- 514.   April 28, 2000 Memo from Officer Keith Wortz to Sgt. J. Rodican.

- 515.   April 28, 2000 Memo from Sgt. Blanchard Re: "Personal Safty [sic] Memo of Officer K. Wortz"

- 516.   May 2, 2000 Memo from Officer Keith Wortz to Sergeant D. Burgh.

- 517.   May 19, 2000 Memo from Sergeant John R. Minardi to Chief Melvin H. Wearing.

- 518.   May 19, 2000 Memo from Officer Keith E. Wortz to Sergeant John Minardi.

- 519.   May 19, 2000 Memo from Ch9ief Wearing to Officer Keith Wortz.

- 520.   Cartoon-type drawing, apparently related to threats.

- 521.  Handwritten notation from rear of the cartoon-type drawing, stating "Given By Sgt. Blanchard to Capt. Kearney on 5-11-00 @ 1610 Hours Found In Ofc. W. Coppola' Mail Box"
- 522.  New Haven Register article of November 30, 2000.
- 523.  New Haven Register article of December 1, 2000.


-12-

- 524.  December 4, 2000 Memo from Lt. Joanne Peterson to Officer K. Wortz re Internal Investigation No. 134-00-1
- 525.  December 5, 2000 Memo from Lt. Joanne Peterson to File re Internal Investigation No. 134-00-1
- 526.  December 6, 2000 Memo from Lt. Joanne Peterson to Officer K. Wortz
- 527.  Eligibility List No. 98-65, for promotion to Detective, with dates of promotions\
- Chronology of Promotions.1999-2000 (prepared as part of discovery production)
- Minutes of the Board of Police Commissioners regarding promotions to Detective.

## 12. Deposition testimony.

It is currently anticipated that depositions will be utilized only for cross-examination and to refresh recollection.

## 13. Proposed Jury Instructions:

Filed separately.

## 14. Anticipated evidentiary problems:

1.  Plaintiff has filed several motions in limine to which we will respond.

2.  The defense has filed a Motion in Limine To Preclude Evidence Of Possible Indemnification of the defendant by the City of New Haven.

-13-

3.  The defense is also filing a motion in limine to preclude certain evidence which the plaintiff apparently seeks to offer, in particular evidence about

(A) the civil service so-called Rule of Three and the police department's application of that rule,  as well as (B) evidence regarding the qualifications of other persons promoted to detective.

## 15. Anticipated trial time:

Defendant believes that trial should take one weekw, in addition to jury selection.

## 16. Further proceedings:

The defense believes further narrowing of the issues is desirable and will make unnecessary many evidentiary rulings at trial and the shortening of trial.

## 17. Trial by Magistrate-Judge:

The defendant does not agree to a trial by a Magistrate-Judge.

## 18. Future amendments: The parties reserve the right to amend the information cited herein if necessary or appropriate before or during the course of trial.

Respectfully submitted,

/s/_____
Martin S. Echter
Deputy Corporation Counsel
165 Church Street, 4th Floor
New Haven, CT06510
Phone: (203) 946-7958
Fax: (203) 946-7942
Pager: 1-860-590-4432
Fed. Bar No. ct 07596

-14-

<u>Certificate of Service</u>

I, Martin S. Echter, hereby certify that I have served the foregoing by causing a copy to be HAND-DELIVERED, to Attorney Karen Lee Torre, 51 Elm Street, 3rd Floor, New Haven, CT 06510, this day of        September, 2004.

/s/_____
Martin S. Echter

-15-